**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTON MCCULLOUGH,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:21-0279** |
| **v.** | : | **(JUDGE MANNION)** |
| **KEVIN RANSOM,** *et al.*, | : | |
| **Defendants** | : | |

**MEMORANDUM**

**I. BACKGROUND**

Plaintiff, Anton McCullough, an inmate confined at the State Correctional Institution, Dallas ("SCI-Dallas"), Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 2). The named Defendants are SCI-Dallas Superintendent Kevin Ransom, Wellpath, and Wellpath CEO Jorge Dominicis. Id. Plaintiff complains about conditions at SCI-Dallas as they relate to the COVID-19 pandemic. Id.

Presently before the Court are Defendants' motions to dismiss Plaintiff's complaint. (Docs. 19, 22). The motions are ripe for disposition. For the reasons that follow, the Court will grant Defendants' motions to dismiss.

## II. ALLEGATIONS IN COMPLAINT

Plaintiff's compliant states in toto:

Governor Tom Wolf announced a public health crisis in Pennsylvania on March 6, 2020, caused by the novel coronavirus (COVID-19). The World Health Organization announced a Covid-19 pandemic on March 11, 2020 making the aforementioned public health crisis worldwide.

At the aforesaid time of occurrence Defendants Ransom, Wellpath and Dominicis all had actual and constructive knowledge of COVID-19 causing a public and worldwide health crisis from reports issued by the Federal Centers for Disease Control and Prevention and the Commonwealth Department of Health. All said Defendants, thus, had constitutionally mandated obligations to take timely reasonable measures to protect Plaintiff while in their custody, from becoming exposed to and infected by COVID-19, a disease which was at the time of occurrence, remote and beyond the perimeter of SCI-Dallas. However, Defendants were contrarily gross negligent towards Plaintiff's safety and general well-being by consciously disregarding their aforementioned constitutional obligations, in a careless and reckless manner by way of:

> A. Failing to establish and maintain timely and preventive measures of enforcing their correctional and medical staff to wear safety masks and social distance while inside and outside of facility.

> B. Failing to establish and maintain timely and preventive measures of enforcing their correctional and medical staff to take COVID-19 tests on a routine daily basis before entering the facility.

By way of the Defendants' aforesaid acts, and or omissions, on about the 23rd day of December, 2020, Plaintiff tested positive with COVID-19. At the time of testing positive with COVID-19, Plaintiff was housed within the Restricted Housing Unit at SCI-

Dallas without any cellmates, thus, the transmitted disease, without a doubt, derived from a SCI-Dallas employee.

Ransom additionally failed to:

    A. Separate positive and negative cases.

    B. Enforce disinfect cleaning of cells, showers, phones, and handcuffs.

By way of Ransom's failure to act, aforesaid Plaintiff was forced to use the same objects and confined areas as those to whom were positive. Ransom had additionally ceased Plaintiff's access to outdoor recreation to which Plaintiff was deprived of fresh air and exercise since August of 2020. As a result of being deprived of outdoor recreation for several months without a legitimate reason, but an exaggerated response to extremely late COVID-19 preventive measure, Plaintiff:

    A. Was deprived of fresh air for his lungs and overall health.
    B. Was confined to a small cell without adequate space or ventilation for 24 hours a day without being effectively able to exercise physically.
    C. Was forced to remain in a small cell for 24 hours daily while music blared into this cell from morning to night, with no ability to concentrate, think or otherwise rehabilitate effectively due to constantly being oppressed and irritated.

Wellpath and Dominicis has also failed to obtain vaccines for Plaintiff from either Pfizer or Moderna, which is drug manufacturers, or provide him antibody treatment while sick with COVID-19.

Plaintiff has underlying health conditions and now that he has contracted COVID-19 he is at risk of severe health complications and death. As a result of Defendants' acts and omissions, Plaintiff was subject to:

A. Contracting COVID-19.
B. Adverse impact upon his overall health.
C. Detriment to his psychological and physical well-being.
D. Deprivation of outdoor exercise and fresh air for several months.
E. Incurring future medical expenses.
F. Living under inhumane and health hazardous conditions.
G. Being denied access to a vaccine or antibody treatment for the effective treatment of COVID-19.

(Doc. 2, complaint). For relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief in the way of release from prison. Id.

## III. DEPARTMENT OF CORRECTIONS ("DOC")'S RESPONSE TO COVID-19.

The Court takes judicial notice of the preventative measures enacted by the DOC since the start of the COVID-19 pandemic in early 2020. See COVID-19 and the DOC, https://www.cor.pa.gov/PAges/COVID-19.aspx. In-person visitation has been suspended since March 13, 2020. See id. "All new inmates are being screened before being admitted into prison," and the DOC is not accepting inmates with flu-like symptoms from county institutions. See id. The DOC has provided inmates with disposable masks and "strongly encourage[s] inmates" to use them. See id. Moreover, inmates "are being provided materials to clean their cell[s] daily. Materials will be provided to

them on a daily basis." See id. Institutions are conducting town hall meetings with inmates "to review sanitation guidelines and COVID-19 information for awareness." See id. Correctional Industries has increased the production of anti-bacterial soap, and soap is provided free of charge to all inmates. See id.

With respect to staff members, all facilities conduct "enhanced screening for all individuals entering a facility. No one will be permitted to enter a facility who has a fever over 100 degrees or exhibits signs of cold or flu." See id. Staff are required to wear masks, and "institutions have provided each staff member with a cloth mask for use." See id. Daily updates are provided to all staff members, and PPE has been provided to all staff. See id. Employees are advised to stay home if they are sick. See id.

Each institution "has plans in place for quarantine if an inmate tests positive." See id. All gyms, barber shops, and cosmetology areas have been closed until further notice, as have the general libraries. See id. DOC officials have also reduced the inmate population where they can by furloughing paroled individuals from centers to home plans, maximizing parole releases, expediting the release process for anyone with a pending home plan, and reviewing inmates who are beyond their minimum sentences. See id.

- 5 -

The DOC has also begun to vaccinate inmates and staff. "Non-medical staff and inmates are in Phase 1B, with vulnerable inmates being prioritized." See id. All inmates will be offered the vaccine. See id. No one will be required to receive the vaccine, but the DOC will focus on "encouraging vaccination for those inmates in the long-term care setting who are most vulnerable." See id.

## IV. MOTION TO DISMISS

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable

to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the

complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of *pro se* prisoner litigation, the court must be mindful that a document filed *pro se* is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## V. Discussion

### A. Claims Against Defendant Wellpath

Wellpath has contracted with the DOC to provide medical care to inmates housed at SCI-Dallas and other state institutions.  The Third Circuit, however, has held that "a private health care company providing services to inmates 'cannot be held responsible for the acts of its employees under a

theory of respondeat superior or vicarious liability.'" Sims v. Wexford Health Sources, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, a plaintiff must allege that the private healthcare company had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." Natale, 318 F.3d at 584); see also Lomax v. City of Philadelphia, No. 13-cv-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs."). Here, Plaintiff fails to allege any facts demonstrating that the alleged violations of his Eighth Amendment rights resulted from any policies, practices, or customs set forth by Defendant Wellpath. See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (noting that to assert a plausible claim, the plaintiff "must identify [the] custom or policy and specify what exactly that custom or policy was"). For that reason alone, Plaintiff's claims against Defendant Wellpath are subject to dismissal.

## B. Claims Against Defendants Ransom, and Dominicis

For a §1983 claim to survive a motion to dismiss, the plaintiff must

sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violates his rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Solan v. Ranck, 326 F. App'x 97, 100 (3d Cir. 2009).

Here, it appears that Plaintiff seeks to proceed against Defendants Ransom and Dominicis based upon their respective supervisory positions as Superintendent of SCI-Dallas and as Chief Executive Officer for Wellpath. Supervisors, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." See Iqbal, 556 U.S. at 676. The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to §1983: (1) "a supervisor may be personally liable under §1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under §1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'" See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates

an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." See Merring v. City of Carbondale, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

In the instant case, Plaintiff's complaint fails to set forth plausible supervisory liability claims against Defendant Ransom. Plaintiff fails to allege facts indicating that Defendant Ransom personally witnessed staff members not wearing face masks and taking COVID-19 tests and condoned or acquiesced in this behavior. Likewise, there are no facts suggesting that Defendants Ransom directed staff members to not wear face masks and not take COVID-19 tests. While supervisors cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." See Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). The Court, therefore, agrees that Plaintiff has failed to set forth plausible supervisory liability claims against Defendant Ransom.

Plaintiff has also named Dominicis, the CEO of Wellpath, as a Defendant in this matter. The complaint, however, is completely devoid of any facts alleging how Defendant Dominicis violated Plaintiff's constitutional

rights. Rather, it appears that Plaintiff has named Defendant Dominicis solely because of his position as CEO of Wellpath. Plaintiff, therefore, has failed to allege the requisite personal involvement to state a plausible claim for relief against Defendant Dominicis. See Foye v. Wexford Health Sources, Inc., 675 F. App'x 210, 215 (3d Cir. 2017).

## C. **Eighth Amendment Claims**

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2015), *abrogated in party on other grounds by* Mack v. Yost, 968 F.3d 311 (3d Cir. 2020). "[T]he Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." See id. at 347. Such necessities include "adequate food, clothing, shelter, and medical care." See Farmer v. Brennan, 511 U.S. 825, 832 (1994). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." See Hudson v.

McMillian, 503 U.S. 1, 9 (1992). However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 372 (3d Cir. 2019) (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991) and Rhodes, 452 U.S. at 347).

In the instant case, Defendants do not dispute that the COVID-19 pandemic constitutes a substantial risk of harm to inmates.  (Doc. 20 at 8); see also Dixon v. United States, No. 20-5994, 2020 WL 3249231, at *3 (D.N.J. June 16, 2020) (concluding that the inmate-plaintiff could meet the objective prong of an Eighth Amendment claim "because COVID-19 is a very contagious virus that can cause serious health complications or death in vulnerable people"). The Court, however, agrees with Defendants that Plaintiff has failed to allege facts suggesting that Defendants demonstrated deliberate indifference to the risk posed by COVID-19. As noted supra, the DOC has adopted detailed preventative steps to mitigate the risk to inmates and staff and to control the spread of COVID-19 through the state correctional institutions. The Court may take judicial notice of this information, as it is publicly available on a governmental website. See

- 13 -

Vanderklok v. United States, 868 F.3d 189, 205 (3d Cir. 2017). "A review of these steps suggests that DOC officials, including Defendants, have not acted unreasonably with respect to the threat posed by COVID-19 and instead have instituted measures to safeguard the entire inmate population, including Plaintiff." Bevins v . Kauffman, No. 1:20-cv-2012, 2021 WL 322168, at *5 (M.D. Pa. Feb. 1, 2021).

While the Court understands Plaintiff's legitimate concerns regarding the COVID-19 pandemic, it agrees with the numerous courts throughout the nation that have concluded that similar allegations do not support a plausible inference that officials have demonstrated deliberate indifference to inmates' Eighth Amendment rights. See, e.g., Swain v. Junior, 958 F.3d 1081, 1089 (11th Cir. 2020) (granting defendants' motion to stay the district court's grant of a preliminary injunction on the basis that, *inter alia*, the plaintiffs had not demonstrated that defendants were deliberately indifferent to the risk posed by COVID-19 because the correctional facility had "implemented many measures to curb the spread of the virus"); Bevins, 2021 WL 322168, at *5; Allen v. Wetzel, 2021 WL 2254997 at *7 (M.D. Pa. June 3, 2021) (finding that prison officials did not exhibit deliberate indifference to inmate's Eighth Amendment rights); Wilkins v. Wolf, No. 1:20-cv-2450, 2021 WL 1578250, at *6-7 (M.D. Pa. Apr. 22, 2021) (finding that inmate-plaintiff had failed to

- 14 -

state an Eighth Amendment claim regarding an alleged inadequate response to the COVID-19 pandemic); Wylie v. Bonner, No. 2:20-cv-2593-TLP-tmp, 2021 WL 261280, at *4-6 (W.D. Tenn. Jan. 26, 2021) (finding that inmate-plaintiff had failed to state an Eighth Amendment conditions of confinement claim because he failed to allege that staff knew of and disregarded the risks posed by COVID-19); Shokr v. LeBlanc, No. 20-488, 2020 WL 8093228, at * (M.D. La. Dec. 14, 2020) (concluding that the inmate-plaintiff had failed to state a plausible Eighth Amendment claim because measures were being taken to combat the COVID-19 virus); Kesling v. Tewalt, 476 F. Supp. 3d 1077, 1086-88 (D. Id. 2020) (concluding that inmate-plaintiff's amended complaint failed to set forth a plausible Eighth Amendment claim when prison officials had developed and instituted policies to curb the spread of COVID-19); McKissic v. Barr, No. 1:20-cv-526, 2020 WL 3496432, at *6 (W.D. Mich. June 29, 2020) (concluding that inmate-plaintiff failed to state an Eighth Amendment claim where defendants had taken "significant measures . . . to secure prisoner safety and prevent infection" and the plaintiff's "speculation about the mere possibility that he will become infected does not rise to the level of an Eighth Amendment violation"). Indeed, "the Eighth Amendment does not require perfection on the part of prison officials." See Wylie, 2021 WL 261280, at *6.

The Court is sympathetic to the fact that Plaintiff contracted COVID-19. Plaintiff's complaint, however, is devoid of any allegations that he experienced any serious symptoms upon contracting COVID-19. From the complaint, as pled, the Court "cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, [Defendants] here acted unreasonably by 'doing their best.'" See Swain v. Junior, 961 F.3d 1276, 1289 (11th Cir. 2020). The Court, therefore, will grant Defendants' motions to dismiss and dismiss Plaintiff's complaint for failure to state a plausible Eighth Amendment claim.

### D. Administration Exhaustion

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. See 42 U.S.C. §1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. §1997e(a). The exhaustion requirement is

mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. See id. Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. See, e.g., Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," see Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion

requirement. See Harris, 149 F. App'x at 59. Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *See Warman*, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." See id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." See id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." See id. Finally, a procedure is unavailable when "prison administrators thwart inmates from

taking advantage of a grievance process through machination, misinterpretation, or intimidation." See id. at 1860. However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." See Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018).  The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

Hardy v. Shaikh, 959 F.3d 578, 588 (3d Cir. 2020).

Defendants Wellpath and Dominicis maintain that they are entitled to dismissal of Plaintiff's complaint as his grievance history reveals that Plaintiff has failed to file a single grievance related to his medical care that was appealed to final review. (Doc. 23-2). Plaintiff does not refute this in his brief in opposition. Plaintiff, therefore, has not refuted the defense that he failed to properly exhaust the claims he raises in his instant complaint regarding the DOC's response to the COVID-19 pandemic. Accordingly, because the PLRA requires full and proper exhaustion prior to the initiation of Plaintiff's claims in federal court, and this Court cannot excuse compliance with those requirements, Defendants Wellpath and Dominicis are entitled to dismissal

on the basis that Plaintiff failed to properly exhaust his administrative remedies.

## VI. LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, it is clear from the facts alleged in the *pro se* complaint that any attempt to amend the plaintiff's §1983 claims against the named Defendants would be futile. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the Court will dismiss the Plaintiff's §1983 claims without leave to amend.

## VII. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions without leave to amend. (Doc. 19, 22.) A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 17, 2022**
21-0279-01

- 21 -